IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GARY SKUPIEWSKI,                          )
                                          )
            Plaintiff,                    )
                                          )
      vs.                                 )     No. 07 C 3657
                                          )
DETECTIVE JAMES KENNY #248,               )
OFFICER JOHN O'HALLORAN #225,             )
SERGEANT GEORGE JANECEK #306              )
and the CITY OF BERWYN,                   )
                                          )
            Defendants.                   )

## MEMORANDUM OPINION AND ORDER

Plaintiff Gary Skupiewski filed suit against defendant police officers James Kenny,

John O'Halloran, George Janecek, and defendant City of Berwyn, alleging that he was

arrested without probable cause and with unreasonable force. The defendants move for

summary judgment. For the following reasons, we deny the motion. We also request that the

parties provide us with further briefing.

## BACKGROUND

The parties' accounts of the events on the evening of July 2, 2005, are vastly different,

but this much at least is undisputed. Defendant Kenny arrived at the corner of Cermak and

Clarence in Berwyn in response to a police call. At the scene he found an intoxicated woman

lying on a bench and plaintiff kneeling in the woman's general vicinity.[1] A short time later,

defendant O'Halloran arrived at the scene. Defendant Janecek followed shortly thereafter,

as did two paramedics called to attend to the intoxicated woman.

---

[1] Plaintiff testified that he was kneeling on the pavement behind the woman. Defendant officers
testified that he was kneeling in front of her. The exact position is immaterial to the disposition of the motion.

After some sort of altercation, defendant Kenny arrested plaintiff. At this time, defendant Janecek ordered defendant O'Halloran to assist defendant Kenny in taking plaintiff into custody. Plaintiff was placed in a police vehicle and transported to the Berwyn police station. At some point while plaintiff was in custody he complained of pain. Paramedics were called to examine plaintiff and arrived at the police station shortly after the call. The paramedics transported plaintiff to MacNeal Hospital via ambulance for further treatment.

Plaintiff was charged with public intoxication, loitering, resisting a peace officer, and battery. The charges of public intoxication, resisting a peace officer, and battery were ultimately dismissed. The parties dispute the disposition of the loitering charge.

## DISCUSSION

Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We may not make credibility determinations, weigh evidence, or decide which inferences to draw from the facts. Id. at 255. Instead, we draw all inferences and view all admissible evidence in the light most favorable to the non-moving party. Id.

As we indicated above, the parties disagree about much of what happened in this case. Defendants contend that plaintiff appeared intoxicated from the moment of defendant Kenny's arrival. Defendant Kenny testified that he ordered plaintiff to leave the scene multiple times and each time plaintiff refused to do so. Plaintiff became increasingly belligerent, and

defendants made the decision to arrest him. Plaintiff resisted arrest and defendants used force to subdue him. Were this the only version of events, summary judgment would indeed be appropriate. But, not surprisingly, plaintiff tells a much different story.

During plaintiff's deposition, he was clear and consistent in his denial of the defendants' version of the events of the evening of July 2, 2005. According to plaintiff, he had consumed no alcohol that day (Skupiewski Dep. 1/8/08 at 72:19-73:17; 84:15-17). When defendant Kenny arrived at the scene, he asked plaintiff for identification and plaintiff complied without complaint (*id.* at 84:18-85:4; 86:8-13). Defendant Kenny told plaintiff "you can go" (*id.* at 90:5-14), but plaintiff did not do so (*id.* at 86:14-18; 90:15-16). But when defendant Kenny again told plaintiff to leave, he understood this to be an order and began to comply (*id.* at 86:19-87:2; 87:6-8; 88:13-17; 89:10-18; 90:22-24). As he turned to leave, he said to himself in a low voice, so that defendant Kenny could not hear it, "what a jerk" (*id.* at 88:19-89:7; 91:1-3). After this, defendant Kenny "slammed" plaintiff up against the glass window of a nearby business and told him he was under arrest. (*id.* at 91:13-18). Plaintiff submitted to the arrest (*id.* at 91:22-92:21), but defendants Kenny and then O'Halloran continued to use physical force.

So we are presented with two very different versions of the events. They are mutually exclusive, that is, both cannot have occurred. But which is the more accurate? That is not a decision for us to make at the summary judgment stage. That is a decision that must be left to the jury. Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) ("As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants."). With this fundamental general principle in mind, we address the defendants' arguments.

## A. Defendants Kenny and O'Halloran

### 1. Probable Cause

Defendants argue that there was probable cause to arrest plaintiff for three offenses: loitering, pubic intoxication, and resisting a peace officer/battery. Probable cause is an absolute defense to a § 1983 claim against police officers for wrongful arrest. Chelios v. Heavener, 520 F.3d 678, 685-86 (7th Cir. 2008). Probable cause to arrest exists "if, at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. at 686 (internal citations omitted). The determination of probable cause requires consideration of the totality of the circumstances, and so generally presents a question for the jury, unless "there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." Sheik-Abdi v. McClellan, 37 F.3d 1240, 1246 (7th Cir. 1994). See also Chelios, 520 F.3d at 686; Maxwell v. City of Indianapolis, 998 F.2d 431, 434 (7th Cir. 1993).

In the city of Berwyn, loitering is defined as "remaining idle in essentially one location and includes the concepts of spending time idly; to be dilatory; to linger; to stay; to saunter; to delay; and to stand around." Berwyn City Ordinance § 666.07(a)(1). The defendants contend that plaintiff "aimlessly" stayed in the vicinity without providing any assistance to the officers or paramedics. At the same time, he refused their orders to leave. See Berwyn City Ordinance § 666.07(b)(2). Plaintiff testified that he and another man found the woman on the ground and agreed that plaintiff would stay with her while the other man phoned the police

(Skupiewski Dep. 1/8/08 at 75:9-12; 76:8-77:24). By his account he remained with the woman for approximately 10 minutes before defendants arrived because he was concerned for her safety (*id.* at 78:8-81:9). The arrival of the officers and paramedics, without more, is not enough to turn plaintiff's presence into loitering. A reasonable jury could infer that plaintiff remained in the area for the specific purpose of waiting to see if the woman was ultimately all right. Further, plaintiff testified that when he understood that defendant Kenny was ordering him to leave, he turned to walk away (*id.* at 86:19-87:2; 87:6-8; 88:13-17; 89:10-18; 90:22-24).[2]

Defendants next argue that under Hirsch v. Burke, 40 F.3d 900 (7th Cir. 1994), they had probable cause to arrest plaintiff for public intoxication. They contend that Hirsch stands for the proposition that an officer has probable cause to make an arrest for public intoxication where the particular circumstances give rise to a reasonable belief that the suspect is under the influence, regardless of whether that person is, in fact, intoxicated. While that is an accurate statement of the law in Hirsch, that case is much different than the instant case. In Hirsch, there was no dispute that plaintiff appeared drunk because he was suffering from insulin shock. *Id.* at 901-02. Summary judgment was appropriate because there was no dispute that the officers observed the plaintiff acting in a manner that gave rise to reasonable belief that he was intoxicated. *Id.* at 903-04. In the instant case there is conflicting testimony as to whether plaintiff was acting in a manner that reasonably indicated drunkenness. The defendants testified yes, but plaintiff testified no. The resolution of that material dispute is for the jury.

---

[2] Defendants also argue that plaintiff admitted he was loitering by pleading guilty and paying a fine for the offense. This raises additional issues that concern us, and so we deal with that argument is a separate section below.

The defendants next argument runs into the very same problem. Defendants contend that "[t]here is no shortage of evidence that Skupiewski resisted arrest and committed battery upon Detectives Kenny and O'Halloran." This may be true, but defendants ignore the fact that there is also evidence that plaintiff did not resist arrest. Plaintiff testified that he in no way resisted defendants after defendant Kenny grabbed him and put his face into the glass window of the nearby shop (Skupiewski Dep. 1/8/08 at 91:16-21; 94:12-17). Once again, this is a question for the jury to resolve.

## 2. Excessive Force

"The force used to effect an arrest must be objectively 'reasonable' under the Fourth Amendment." Chelios, 520 F.3d at 689. To determine whether the force used was reasonable, we balance the force used with the government's interests at stake, keeping in mind that "police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." Id. (citing Graham v. Connor, 490 U.S. 386, 396-97 (1989)). Other factors to consider are: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (citing Bell v. Wolfish, 441 U.S. 520, 559 (1979)).

Defendants argue that the force they used was reasonable as a matter of law in light of plaintiff's physical resistance and belligerent behavior. This argument is in direct opposition to plaintiff's version of the events, that he had not committed any crime, had not presented any sort of threat to defendants or any third parties, and had not attempted to flee or evade arrest.

Further, even if defendant Kenny had heard plaintiff say "what a jerk" (Skupiewski Dep. 1/8/08 at 88:18-89:4), that conduct in no way warranted being "slammed" into a glass window (*id.* at 91:13-18) and then "thrown down on the sidewalk" (*id.* at 94:12-96:7).

B. <u>Defendant Janecek</u>

Our analysis of the arguments regarding defendant Janecek are somewhat different than the other police officer defendants. Defendant Janecek is a sergeant in the Berwyn police department. Although he was present at the scene, plaintiff does not allege that he physically took part in plaintiff's arrest. Instead plaintiff argues that Janecek is liable as a supervisor for Kenny and O'Halloran's actions. *See* <u>Morfin v. City of East Chicago</u>, 349 F.3d 989, 1001 (7th Cir. 2003) (holding that supervisor may be liable for the constitutional violations of a subordinate if he is personally involved in the conduct). In order to be liable, a supervisor "'must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'" *Id.* (quoting <u>Chavez v. Ill. State Police</u>, 251 F.3d 612, 651 (7th Cir. 2001)).

Plaintiff testified that he did not know what actions defendant Janecek took during the arrest, and, in fact, was unsure if Janecek was even present at that time (Skupiewski Dep. 1/8/08 at 143:10-146:16). If this were the only evidence regarding defendant Janecek, it would be fatal to plaintiff's case against him. *See* <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (holding that if moving party in summary judgment shows absence of evidence to support nonmoving party's case, then nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial). However, defendant Janecek acknowledges that he arrived on the scene before plaintiff was arrested and remained

present until after plaintiff was subdued. He testified that he was aware that defendant Kenny

made the decision to arrest plaintiff (Janecek Dep. 1/17/08 at 27:7-16), and that when plaintiff

began to physically resist defendant Kenny's attempts to restrain him, he instructed defendant

O'Halloran to assist defendant Kenny (id. at 29:23-30:8). If a jury were to credit plaintiff's

version of events and find that defendants Kenny and O'Halloran violated his constitutional

rights, it would be reasonable for that same jury to determine, based on defendant Janecek's

admissions, that he either participated in or turned a blind eye to the actions of his fellow

officers.

## C. Qualified Immunity

Defendants also argue that they are shielded from any liability under the doctrine of

qualified immunity.    Qualified immunity provides that, "public officials performing

discretionary functions are protected against suits for damages unless their conduct violates

clearly established statutory or constitutional rights of which a reasonable person would have

known." Maxwell, 998 F.2d at 435; see also Mustafa v. City of Chicago, 442 F.3d 544, 548 (7th

Cir. 2006). Qualified immunity is analyzed as a two-step process. We must determine: "(1)

whether the facts, taken in the light most favorable to the plaintiff, show that the defendants

violated a constitutional right; [and] (2) whether that constitutional right was clearly

established at the time of the alleged violation." Chelios, 520 F.3d at 691 (citing Saucier v.

Katz, 533 U.S. 194, 201 (2001)).

When an arrestee challenges the officers' description of the facts and presents a factual

account where a reasonable officer would not be justified in making an arrest, then a material

dispute of fact exists. Morfin, 349 F.3d at 1000 n.13 (citing Arnott v. Mataya, 995 F.2d 121,

124 (8th Cir. 1993)). As we have discussed above, based on plaintiff's deposition testimony a reasonable jury could find that no prudent officer would have believed that plaintiff had committed, was committing, or was about to commit a crime. Similarly, were the jury to credit plaintiff's testimony that he offered no resistance to the arrest and yet still suffered the alleged physical harms, that jury could find that the defendants would have been on notice that the force they used was excessive. Because the facts surrounding the incident are disputed by the parties, summary judgment based on qualified immunity is inappropriate.[3]

## D. Defendant City of Berwyn

Plaintiff's claims against the City of Berwyn are for indemnification only. The City has moved for summary judgment based solely on the argument that summary judgment was appropriate for the police officer defendants and that there was no other party left for it to indemnify. Because we have not granted the police officers' motion for summary judgment, the City of Berwyn must remain a defendant at this time.

## E. Heck v. Humphrey

This case has one additional interesting wrinkle. Plaintiff appeared before an administrative judge in response to the charge that he violated Berwyn's loitering ordinance. The parties agree that initially there was a finding of liability against the plaintiff. Defendants argue that because of this determination, plaintiff's false arrest claim is barred under Heck v. Humphrey, 512 U.S. 477 (1994). Plaintiff has not had an opportunity to address this issue because it was raised for the first time in a cursory manner in defendants' reply brief. Plaintiff

---

[3] Neither party suggests that plaintiff's right to be free from arrest without probable cause or his right to be free from the use of excessive force during an arrest were anything but clearly established at the time of the incident.

does, however, submit the affidavit of Neil Toppel, the attorney that represented him for the loitering charge before the administrative judge. Mr. Toppel avers that after the administrative judge's finding of liability he "filed motions in arrest of judgment, to vacate orders imposing fines and striking post hearing motions and to reconsider" (aff. Neil Toppel at ¶ 4). He further explains that the case was dismissed on February 16, 2006, after the liability finding was vacated, but that there are no written transcripts of the proceedings on that date (*id.* at ¶¶ 5-7). Instead he submits an order from Hearing Officer Ron Belmonte dated February 16, 2006, that indicates "Fine of $150 paid - Case is dismissed" (*id.* at Ex. B). The affidavit raises two important questions: 1) is an administrative finding of liability enough to invoke <u>Heck's</u> bar of a claim that would necessarily employ the invalidity of a conviction or sentence; and 2) if so, has plaintiff put forth sufficient evidence that the conviction has been set aside?

This court was confronted with the first question once before. In <u>Almanza v. Town of Cicero</u>, 244 F. Supp. 2d 913 (N.D. Ill. 2003), plaintiff sued the Town of Cicero and one of its police officers, alleging, among other things, that he was falsely arrested for violating a town ordinance prohibiting disorderly conduct. *Id.* at 915-916. Defendants moved for summary judgment and argued that several of Almanza's claims were barred, as relevant here, by <u>Heck</u>. *Id.* at 915. An administrative hearing officer had found Almanza guilty of violating the ordinance after a 15 to 20 minute hearing at which no court reporter present. *Id.* at 916. Although the ordinance provided for fines of at least $25 and not more than $750, no fine was levied. *Id.*

In our examination of the motion for summary judgment, we acknowledged that <u>Heck</u>

bars any claim that would necessarily employ the invalidity of a conviction or sentence. *Id.* at 915. But Almanza had been convicted in an administrative hearing, and it was not clear to us that such a quasi-criminal determination fell under <u>Heck</u>. Neither party had discussed the issue of whether <u>Heck</u> applied to administrative determinations, so we requested that the parties brief the issue. Before the parties completed the supplemental briefing, the case was voluntarily dismissed.

Although there are some factual differences in the instant case (the parties provided us with a transcript of the initial administrative proceedings on October 20, 2005, and the February 16, 2006, administrative order indicates plaintiff paid a fine of $150), we are faced with a very similar situation. It appears from our research that the question of whether a quasi-criminal proceeding is subject to <u>Heck</u> has not been definitively answered in the intervening period, and so our concerns from <u>Almanza</u> continue. We recognize that, absent a Congressional directive, we must give the same preclusive effect to state agency findings that state courts would give to them. *Id.* at 915 (citing <u>East Food & Liquors, Inc. v. United States</u>, 50 F.3d 1405 (7th Cir. 1995)). At the same time, we acknowledge that Illinois courts do not necessarily give preclusive effect to quasi-criminal determinations. *Id.* Further, federal courts will not give that effect if there are serious doubts as to the fairness, quality or extensiveness of the earlier proceedings. *Id.* (citing <u>Mustfov v. Superintendent of Chicago Police Dep't.</u>, 733 F. Supp. 283 (N.D. Ill. 1990)). We are also mindful that <u>Heck v. Humphrey</u> (along with <u>Rooker-Feldman</u>, <u>Younger</u>, and <u>Colorado River</u>) counsel that federal courts should be cautious about intervening into state proceedings. *Id.* Thus, as we did in <u>Almanza</u>, we turn to the parties to help us discern the answers. Plaintiffs are directed to file a supplemental response

addressing the two questions we outlined above by September 10, 2008, with a reply from

defendants by September 24, 2008.

## CONCLUSION

For the forgoing reasons, we deny the defendants' motions for summary judgment.

Also, we order further briefing on whether plaintiff's claim for a violation of probable cause

must be dismissed under <u>Heck v. Humphrey</u>.


_____
JAMES B. MORAN
Senior Judge, U.S. District Court


_Aug. 20_, 2008